```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____          │
│ DATE FILED: 5/9/2025             │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                              :
ISIAH CLINTON,                      :
                              :
                 Plaintiff,    :           1:24-cv-3408-GHW
                              :
           -v-             :      MEMORANDUM OPINION &
                              :            ORDER
THE CITY OF NEW YORK, POLICE OFFICER :
BIPUL BARMAN, POLICE OFFICER MD SHAH:
and POLICE OFFICER CHARLES DEVER,    :
                              :
                 Defendants.  :
                              :
--------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

     Plaintiff Isiah Clinton suffers from ADHD and bipolar disorder. On October 16, 2023, Mr.

Clinton experienced an acute mental health episode at his mother's apartment. His sister called 911

for assistance, and the individual defendants, police officers for the City of New York, arrived on

the scene. After the officers entered his mother's apartment, Mr. Clinton left the apartment and

began to walk down the street. The officers followed him. Startled, he ran from the officers. They

gave chase, yelling and cursing at him. With the officers in pursuit, Mr. Clinton ran through an

intersection and was hit by a truck.

     Mr. Clinton commenced this action against the City of New York, Police Officer Bipul

Barman, Officer MD Shah, and Officer Charles Dever, alleging false arrest, municipal liability,

multiple common law torts, and violations of New York state and city laws. Defendants have

moved to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

Because Mr. Clinton has not alleged that he submitted to the officers' authority or was physically

restrained, he has failed to plead a violation of his Fourth Amendment rights. However, because the

standard for seizure is different under the New York state constitution, Mr. Clinton has adequately

pleaded false arrest under New York state and city law. As a result, Defendants' motion to dismiss

is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

### A.    Facts[1]

Mr. Clinton has ADHD and bipolar disorder.  Dkt. No. 1 ("Compl.") ¶ 2.  On October 16, 2023, Mr. Clinton experienced "a manic episode during a disagreement with his sister" at his mother's apartment.  *Id.* ¶ 27.  During the episode, his sister called 911 and told the dispatcher that Mr. Clinton "suffered from mental illness" and that "they required EMS and police officer assistance."  *Id.*  Shortly after the call was placed, New York City police officers Bipul Barman, MD Shah, and Charles Dever (collectively, the "Officers") arrived at the apartment and began speaking to Mr. Clinton's mother and sister.  *Id.* ¶ 28.  Mr. Clinton's mother and sister "advised the Officers that Plaintiff was experiencing a manic episode and required medical assistance."  *Id.* ¶ 29.  In response, "[t]he Officers assured Plaintiff's mother that they were there to assist, would take care of Plaintiff, and that they would 'handle it.'"  *Id.*  During this exchange, Mr. Clinton "walked right past the Officers" and left the apartment.  *Id.* ¶ 30.  The Officers saw Mr. Clinton exit the apartment but apparently did not understand that he was the reason for the call because they "did not try to stop him" or ask him not to leave.  *Id.* ¶ 31.

Shortly after Mr. Clinton left the apartment, the Officers asked if they could speak to the person experiencing the mental health episode directly.  *Id.* ¶ 33.  Mr. Clinton's mother and sister "explained to them that he had walked right past them and had just left the apartment."  *Id.* ¶ 33.  The Officers "told Plaintiff's family not to worry, that they would find Plaintiff and bring him back to the apartment."  *Id.* ¶ 34.  Concerned that Mr. Clinton might be scared if he saw the Officers

---

[1] Unless otherwise noted, the facts are taken from the complaint and are accepted as true for the purposes of this motion.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

following him, his family offered to accompany the Officers to help reassure Mr. Clinton and to

"calm him down." *Id.* ¶ 35.  However, the Officers declined any assistance, "stating dismissively

'don't worry, we got this,' 'stay right here,' and 'we will find him and bring him back.'"  *Id.* ¶ 36.  Mr.

Clinton's mother and sister remained inside the apartment.  *Id.* ¶ 37.

"As Plaintiff was walking down the block, he noticed the [] Officers rapidly approach him

from behind." *Id.* ¶ 38.  "Upon seeing the [] Officers, Plaintiff became extremely fearful for his life

and began to run away from them."  *Id.* ¶ 39.  The Officers then began "chasing after" Mr. Clinton

"at full speed" while "screaming and cursing at him as they ran towards him."  *Id.* ¶ 40.  As Mr.

Clinton fled from the Officers, he ran into the intersection of First Avenue and 105th Street, New

York, and was struck by a truck hauling a tractor trailer, knocking him unconscious. *Id.* ¶ 41.  Mr.

Clinton was subsequently taken to Presbyterian Hospital where he was treated for severe injuries.  *Id.*

¶ 42.

### B.  Procedural History

Plaintiff commenced this action on May 2, 2024 against the City of New York and the

Officers.  Dkt. No. 1.  Plaintiff's complaint asserts the following claims:  (1) false arrest or false

imprisonment under 42 U.S.C. § 1983 ("Section 1983"), (2) municipal liability under Section 1983,

(3) unlawful deprivation of liberty, (4) failure to intervene, (5) negligence, (6) assault under New

York state law, (7) battery under New York state law, (8) negligent infliction of emotional distress,

(9) "negligent hiring/training/retention," (10) false arrest under N.Y.C. Admin Code § 8-802, (11)

city-employer's liability for the Officer's violation of plaintiff's N.Y.C. Admin Code § 8-802 rights,

(12) city-employer's liability for the Officer's failure to intervene in violation of plaintiff's N.Y.C.

Admin Code § 8-802 rights, and (13) false arrest in violation of article I, § 12 of the New York state

constitution.  Dkt. No. 1 at 9–22.

On October 28, 2024, Defendants filed a motion to dismiss the complaint for failure to state

a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Dkt. No. 17; *see also* Dkt. No. 19 ("Def. MOL").  On

December 20, 2024, Plaintiff filed a memorandum of law in opposition.  Dkt. No. 28 ("Pl. Opp.").

Defendants filed a reply on January 17, 2025.  Dkt. No. 29 ("Def. Reply").

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  It is not

enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]"

claims "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  "To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v.

Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S.

at 679.  The court must accept all facts alleged in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)

(per curiam).  However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere
> conclusory statements, do not suffice."  A complaint must therefore contain more
> than "naked assertion[s] devoid of further factual enhancement."  Pleadings that
> contain "no more than conclusions . . . are not entitled to the assumption of truth"
> otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting

*Iqbal*, 556 U.S. at 678–79).  Thus, a complaint that offers "labels and conclusions" or "naked

assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).

## III.  DISCUSSION

### A.  Plaintiff Fails to Adequately Plead False Arrest or Deprivation of Liberty Pursuant to Section 1983

Plaintiff has failed to adequately plead a claim for false arrest pursuant to Section 1983 because he does not allege that he was seized—as seizure is defined by federal law. "A claim for false arrest pursued under section 1983 arises out of plaintiff's Fourth Amendment right to be free from unreasonable seizures, 'which includes the right to remain free from arrest absent probable cause.'" *Espada v. Schneider*, 522 F. Supp. 2d 544, 551 (S.D.N.Y. 2007) (quoting *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006)). "A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)) (internal brackets and ellipses omitted). "A seizure [] requires '*either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority.'" *U.S. v. Swindle*, 407 F.3d 562, 572 (2d Cir. 2005) (emphasis in original) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)); *see also*

*Torres v. Madrid*, 592 U.S. 306, 311 (2021) ("[S]eizure of a person . . . can take the form of physical force or a show of authority that in some way restrains the liberty of the person." (internal quotation marks and brackets omitted)).  "The word 'seizure' . . . 'does not remotely apply to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee.  That is no seizure.'"  *Swindle*, 407 F.3d at 572 (quoting *Hodari D.*, 499 U.S. at 626).

Plaintiff has not adequately pleaded that he was seized because he does not allege either that he was physically apprehended or that he submitted to the Officers' authority.  There is no allegation that the Officers made any physical contact with Plaintiff or physically restrained his movement.  And in fleeing immediately after seeing the Officers, Compl. ¶ 39, he was evading the Officers' authority, not submitting to it.  *See U.S. v. Huertas*, 864 F.3d 214, 217 (2d Cir. 2017) ("[A]s Huertas saw Officer Lattanzio getting out of his car, Huertas ran.  Among the significant circumstances are the brevity of the interaction and the fact that Officer Lattanzio was never within reach of Huertas and able to physically restrain him.  As in *Baldwin*, the totality of the circumstances indicate that the defendant was evading police authority, not submitting to it.  Huertas was never seized.").  Therefore, Plaintiff has failed to plead a false arrest claim pursuant to Section 1983.

### B.  Plaintiff Fails to Plead a Failure to Intervene Claim

Because Plaintiff has failed to adequately plead a constitutional violation, his federal failure-to-intervene claim cannot proceed as a matter of law.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014).  "An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers."  *Id.*  "A failure to intervene claim is contingent only on the underlying claim."  *Buari v. City of New York*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021).  "Accordingly, 'there can be no failure to

intervene claim without a primary constitutional violation.'" *Id.* (quoting *Sanabria v. Tezlof*, No. 11-cv-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016)).

As discussed above, Plaintiff has failed to plead a violation of his constitutional rights under Section 1983, so he has failed to state a federal failure to intervene claim. *See Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021) ("A plaintiff cannot succeed on a claim for failure to intervene under § 1983 when there is no underlying constitutional violation." (citing *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014) (summary order))); *Harig v. City of Buffalo*, No. 22-30-cv, 2023 WL 3579367, at *5 (2d Cir. May 22, 2023) (summary order) (holding that a "claim for failure to intervene to prevent unconstitutional acts is [] unsuccessful due to the lack of a predicate constitutional violation"); *Harry v. City of New York*, No. 23-69-cv, 2024 WL 260968, at *3 (2d Cir. Jan. 24, 2024) (summary order) ("Because Harry has failed to establish any underlying constitutional violation, we affirm the dismissal of Harry's failure-to-intervene claim against the individual Defendants").

### C. Plaintiff Fails to Plead *Monell* Liability

A municipality like the City of New York "may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (citing *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978)). Instead, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quotations and citation omitted). Because Plaintiff has not alleged that his constitutional rights have been violated, he also fails to state a claim for *Monell* liability. *See Bolden v. Cnty. of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013) (summary order) ("[B]ecause the district court properly found no underlying constitutional violation, its decision not to address the County defendants' liability

under *Monell* was correct."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." (emphasis in original)).

### D. Plaintiff Adequately Pleads a Violation of His Rights Under Article I, Section 12 of the New York State Constitution

Plaintiff has adequately pleaded that he was seized without probable cause in violation of article I, § 12 of the New York state constitution.  "To prevail on a claim of false arrest under New York law, the plaintiff must show that:  (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018) (citing *Broughton v. New York*, 37 N.Y.2d 451, 456 (1975)).  "The great weight of authority, including New York, recognizes the rule that neither actual malice nor want of probable cause is an essential element of an action for false imprisonment."  *Id.* (quoting *Broughton*, 37 N.Y.2d at 457).  Rather, probable cause is an absolute defense to a false arrest claim.  *Id.*; *see also McLennon v. City of New York*, 171 F. Supp. 3d 69, 87 (E.D.N.Y. 2016) ("A defendant bears the burden of raising and proving the existence of probable cause for a plaintiff's arrest.").

#### 1. Plaintiff Adequately Pleads That He Was Seized Under New York Law

"While the search and seizure provision of the [New York] State Constitution is similar to the wording of the Fourth Amendment and supports a policy of uniformity between State and Federal courts, [the Court of Appeals of New York] ha[s] held that [the] State provision, for reasons peculiar to New York, is subject to its own interpretation."  *People v. Bora*, 83 N.Y.2d 531, 534 (1994). Accordingly, under New York law, it is "not required that an individual be physically restrained or submit to a show of authority before finding a seizure."  *Id.*  "[O]ne may be seized if the police

action results in a 'significant interruption [of the] individual's liberty of movement.'" *Id.* (quoting *People v. De Bour*, 40 N.Y.2d 210, 216 (1976)). Thus, unlike under federal law, "a verbal command . . . coupled with other behavior" may constitute a seizure. *Id.* at 535. For example, in *People v. Townes*, the court held that shouting "freeze" with guns drawn constituted a "significant interruption [of] th[e] defendant's freedom of movement." 41 N.Y.2d 97, 101 (1976).

However, "a verbal command, standing alone, will not usually constitute a seizure." *Bora*, 83 N.Y.2d at 535. For example, in *People v. Bora*, the police officer merely walked toward the defendant and directed him to "stop" as the defendant walked away. *Id.* at 534. That situation, the court held, did not rise to the level of a seizure. But the court noted that "the language used by police may, in some instances, be so forceful and intimidating that it constitutes the seizure of an individual." *Id.* at 536. "The test is whether a reasonable person would have believed, under the circumstances, that the officer's conduct was a significant limitation on his or her freedom." *Id.* at 535. "Typically the inquiry involves a consideration of all the facts and a weighing of their individual significance: was the officer's gun drawn, was the individual prevented from moving, how many verbal commands were given, what was the content and tone of the commands, how many officers were involved and where the encounter took place." *Id.* at 535–36.

Plaintiff has alleged facts that make it plausible that a reasonable person could conclude that Plaintiff's freedom of movement was limited. While there is no allegation that the Officers' guns were drawn, Plaintiff's allegations support the inference that the content and tone of the Officers' verbal commands were sufficiently "forceful and intimidating." *Bora*, 83 N.Y.2d at 536. The Officers were "screaming and cursing" at Plaintiff as they pursued him. Compl. ¶ 40. And the Officers' conduct did not consist of "a verbal command, standing alone." *Bora*, 83 N.Y.2d at 535. They were running "at full speed" after him. Compl. ¶ 40; *see People v. Holmes*, 81 N.Y.2d 1056, 1057–58 (N.Y. 1993) ("Police pursuit of an individual 'significantly impedes' the person's freedom

9

of movement and thus must be justified by reasonable suspicion that a crime has been, is being, or is

about to be committed.").  Because New York law requires an assessment of the individual

significance of all of the facts, the Court concludes that Plaintiff has adequately pleaded that he was

subjected to a false arrest under the New York constitution.

### 2. The Court Cannot Find That the Officers Had Probable Cause to Arrest Plaintiff on This Record

#### a. There Is No Probable Cause on the Face of the Complaint

It is not apparent from the face of the Complaint that the Officers had probable cause to

arrest Plaintiff when they began to chase him down the street.  Because probable cause is an

affirmative defense and not an element of a false imprisonment claim, it "may be raised by a pre-

answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if

the defense appears on the face of the complaint."  *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67,

74 (2d Cir. 1998).  "In general, the existence or absence of probable cause is a question of fact and

becomes a question of law to be decided by the court only where there is no real dispute as to the

facts or the proper inferences to be drawn therefrom."  *Holland v. City of Poughkeepsie*, 935 N.Y.S.2d

583, 589 (N.Y. App. Div. 2d Dept. 2011); *see also Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)

("[W]hether or not probable cause existed may be determinable as a matter of law if there is no

dispute as to the pertinent events and the knowledge of the [arresting] officers.").  "Officers have

probable cause when they have knowledge or reasonably trustworthy information of facts and

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

person to be arrested has committed or is committing a crime."  *Hernandez v. United States*, 939 F.3d

191, 199 (2d Cir. 2019) (internal quotation marks omitted).  The test for probable cause is an

objective one and "depends upon the reasonable conclusion to be drawn from the facts known to

the arresting officer at the time of the arrest."  *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007)

(quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

There are no facts or circumstances that are apparent on the face of the Complaint that would warrant a person of reasonable caution to believe that Plaintiff had committed or was committing a crime at the time the Officers chased him down the street. All that the Complaint alleges is that Plaintiff was at his mother's apartment when he experienced a "manic episode during a disagreement with his sister." Compl. ¶ 27. There is no allegation that his sister reported any criminal behavior when she called 911, and there is no other alleged basis for the Officers to have "knowledge or reasonably trustworthy information" that Plaintiff "ha[d] committed or [was] committing a crime" when they arrived on the scene. *Weyant*, 101 F.3d at 852; *see also United States v. Freeman*, 735 F.3d 92, 98 (2d Cir. 2013) (probable cause not established by an anonymous 911 call saying that a man had a gun and was "arguing with a female"); *Mizrahi v. City of New York*, No. 15-cv-6084 (ARR) (LB), 2018 WL 3848917, *20 (E.D.N.Y. Aug. 13, 2018) (holding that a 911 call alleging that the plaintiff was "going to hurt herself" was insufficient to establish probable cause). Nor is there an allegation that Plaintiff committed a crime or engaged in any unlawful conduct after the Officers arrived. Compl. ¶ 54.

### b. The Court May Not Consider a Transcript of the 911 Call at This Stage

Defendant's argument that probable cause exists is based on a document that the Court cannot consider at the motion-to-dismiss stage. Defendants contend that the Officers were justified in arresting Plaintiff because he was "drunk, charged at [his sister] twice, tried to attack her and refused to leave the apartment." Def. MOL at 6. Defendants rely on a transcript of the sister's 911 call for this argument. However, because a transcript of the 911 call was neither incorporated by reference in the Complaint nor integral to the Complaint, the Court may not consider the transcript at this stage.

At the motion to dismiss stage, an affirmative defense must be apparent—if not on the face of the complaint—"on the face of documents incorporated by reference within the complaint or

documents that are integral to the complaint." *Moore v. Hadestown Broadway L.L.C.*, 722 F. Supp. 3d 229, 257 (S.D.N.Y. 2024); *see also Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) ("[I]n determining whether a complaint states a claim, the court is required to make [its] assessment . . . without considering extraneous facts and materials.").  "To be incorporated by reference, the [c]omplaint must make a clear, definite, and substantial reference to the documents." *White v. City of New York*, 206 F. Supp. 3d 920, 929 (S.D.N.Y. 2016) (internal citation and quotation marks omitted).  "A mere passing reference . . . to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner, Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (citations omitted); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").

"A document is integral to the complaint where the complaint relies heavily upon its terms and effect." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks omitted). "A document is not integral simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff *relied* on the documents in preparing his complaint." *Williams v. City of New York*, No. 14-cv-5123, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015) (emphasis in original); *see also Pearson*, 125 F.4th at 406 ("[E]xtraneous materials do not become integral parts of the complaint unless the plaintiff relied on them in drafting the complaint."); *Chambers*, 282 F.3d at 153 (stressing that the "plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion" (emphasis in original)).

The Second Circuit has held that "[w]hen a defendant submits extraneous materials with a Rule 12(b)(6) motion to dismiss, the district court must either ignore the materials and resolve the motion on the basis of the complaint alone or convert the motion to one for summary judgment

and give the parties the opportunity to conduct appropriate discovery." *Pearson v. Gesner*, 125 F.4th

400, 407 (2d Cir. 2025) (citing *Palin v. New York Times Co.*, 940 F.3d 804, 810–11 (2d Cir. 2019)); *see*

*also* Fed. R. Civ. P. 12(d).[2]

The Court may not consider the content of the 911 call, except as alleged in the Complaint,

to decide Defendants' motion to dismiss. First, the transcript of the 911 call is not integral to the

Complaint because there is no evidence that Plaintiff relied on it when drafting the Complaint. *See*

*Martin v. Cnty. of Nassau*, 692 F. Supp. 2d 282, 289 (E.D.N.Y. 2010) (disregarding police reports,

witness statements, and other similar documents relating to false arrest claim because plaintiff did

not rely on those documents in framing the complaint). In fact, at the October 2, 2024 pre-motion

conference held on the record, counsel for Defendants acknowledged that a transcript of the 911

call had never been produced to Plaintiff. *See* Dkt. No. 21, Transcript of October 2, 2024

Conference, at 17:7–10. And counsel for Plaintiff asserted that Plaintiff had not been in possession

of the transcript prior to the conference. *Id.* at 12:17–18. Therefore, Plaintiff could not possibly

have relied on this document in framing the Complaint.

Second, Plaintiff did not reference the transcript of the 911 call in the Complaint. Plaintiff

only mentions the 911 call once in the Complaint. Compl. ¶ 27 (mentioning that Plaintiff's "sister

called 911 and advised the dispatcher that Plaintiff suffered from mental illness, and as such, they

---

[2] The Court will not convert the present motion to dismiss into a motion for summary judgment because Plaintiff has not had "a reasonable opportunity to present all the material that is pertinent to the motion." *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008); *see also Access 4 All, Inc. v. Trump Intern. Hotel and Tower Condo.*, 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006) (holding that the Court must be "satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings"). Defendant's memorandum of law does not request that the Court convert the motion to one for summary judgment. *See Sahu*, 548 F.3d at 69 ("[T]he defendants' submissions—including the defendants' memorandum of law in support of their motion to dismiss, which discussed much of this evidence at length— . . . do not seem to us to be the equivalent of a motion to convert."). Accordingly, Plaintiff's opposition argued only "that the court was not required to consider matters outside the pleadings." *Id.* Plaintiff did not provide "exhibits, affidavits, counter-affidavits, depositions, etc." on the issue of probable cause. *Id.* at 67. Indeed, at the conference held on the record on October 2, 2024, Plaintiff "requested the opportunity to seek further discovery if the court deemed it necessary to consider extrinsic material." *Id.* at 69; *see* Dkt. No. 21, Transcript of October 2, 2024 Conference, at 13:10–15. The Court is not aware that any such discovery took place. The Court is therefore not assured that Plaintiff has had an opportunity to present all the material evidence regarding probable cause.

required EMS and police officer assistance"). Not only is this "a mere passing reference," but it is also not a reference to the *transcript* of the call, the relevant "document," at all. *Williams v. Time Warner, Inc.*, 440 F. App'x at 9; *see also Sira*, 380 F.3d at 67 (holding that "paraphrasing of certain events occurring during parts of the disciplinary hearing" did not incorporate the "hearing transcripts" into the complaint). Defendants here seem to be arguing that they should be able to offer a document not referenced in the Complaint and not in Plaintiff's possession simply because it sheds light on an event discussed in the Complaint. That is inappropriate at the motion-to-dismiss stage. *See Harrison v. HSBC USA Inc.*, No. 09-cv-1553 (LTS) (FM), 2010 WL 99395, at *2–3 (S.D.N.Y. Jan. 6, 2010) ("Although the documents were apparently generated in connection with the events at issue and include relevant factual assertions, there is no indication that Plaintiff possessed them, much less referenced or relied upon them. . . . Probable cause for the arrest is not apparent on the face of the Complaint.").

Accordingly, the Court disregards the transcript of the 911 call and considers solely the allegations in the complaint in deciding whether Plaintiff has stated a claim for false arrest. *See id.* at *3. The face of the Complaint does not suggest that the Officers had probable cause to arrest Plaintiff during the alleged encounter.

### 3. The Court Cannot Determine at This Stage Whether the Officers Are Entitled to Qualified Immunity

The Court cannot, at this stage of the proceedings and on the facts alleged, determine that the Officers are protected by qualified immunity. "Qualified immunity protects an official from liability under *federal* causes of action but is not generally understood to protect officials from claims based on state law." *Jenkins v. City of New York*, 478 F.3d 76, 86 (2d Cir. 2007) (emphasis in original). "Nevertheless, a similar doctrine exists under New York common-law." *Id.* New York law "grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir.

2006).  "Qualified immunity is an affirmative defense," *Liu v. New York City Police Dept.*, 627

N.Y.S.2d 683, 685 (N.Y. App. Div. 1st Dept. 1995), and "[w]hile the applicability of this doctrine to

a given case should be resolved at the earliest appropriate stage of the litigation, a factual inquiry may

be necessary to determine if qualified immunity is available," *Stipo v. Town of N. Castle*, 613 N.Y.S.2d

407, 408 (N.Y. App. Div. 2d Dept. 1994) (internal citations, quotation marks, and brackets omitted).

The Court cannot determine from the face of the Complaint that the Officers acted

reasonably and in good faith.  As discussed above, probable cause is not apparent from the face of

the Complaint, and an adequate record has not been established regarding whether, in the absence

of probable cause, the Officers acted unreasonably or in bad faith.  "[I]t is not appropriate to

determine issues of facts regarding whether the police officers acted in bad faith or without

reasonable basis at this pre-discovery stage of the proceedings."  *Douglas v. City of New York*, 190

N.Y.S.3d 847, 859 (N.Y. Sup. Ct. 2023) (holding that the plaintiffs sufficiently stated a false arrest

claim under the New York state constitution); *see also Benitez v. City of New York*, 207 N.Y.S.3d 924

(N.Y. Sup. Ct. 2024) (refusing to grant qualified immunity where there are "outstanding questions of

fact" regarding the reasonableness of officers' determinations about whether the plaintiff's mental

health episode posed a serious harm to herself or others).

In any event, to argue that the Officers are entitled to qualified immunity, Defendants rely

on Plaintiff's sister's statements during the 911 call, which, as discussed above, are neither integral to

nor incorporated in the Complaint.  *See* Def. MOL at 11.[3]  Defendants have offered no other

---

[3] Defendants' argument that the Officers are entitled to qualified immunity is as follows:

> Here, defendants are not aware of any instance in which the Second Circuit has held that chasing
> after a person after a complaining victim called 911 to report that the person was charging at them,
> trying to attack them, and refusing to leave is insufficient to constitute probable cause to arrest.  As
> such, the individual defendants did not violate any clearly established law, and they are entitled to
> qualified immunity. . . .  [And] there was at least 'arguable probable cause.'  Here, reasonable officers
> could disagree on whether the complaining victim's statements provided probable cause to arrest
> plaintiff.

Def. MOL at 11.  In relying on the "complaining victim's statements" that Mr. Clinton was "charging" and "trying to
attack," Defendants are relying on facts not integral to or incorporated in the Complaint.

argument for why, without the unalleged statements during the 911 call, the Court should find that

the Officers are entitled to qualified immunity.  The Court therefore has been presented with no

justification for holding that qualified immunity defeats Plaintiff's false arrest claims at this time.

For these reasons, Plaintiff has plausibly pleaded a violation of article I, § 12 of the New York state

constitution.[4]

### E. Plaintiff's State Law Claims

#### 1. The Court Has Subject Matter Jurisdiction Over Plaintiff's State Law Claims

While the parties briefed issues of supplemental jurisdiction, the Court has diversity

jurisdiction over Plaintiff's state law claims.  Plaintiff is alleged to be a citizen of Connecticut, and

the Officers are alleged to be residents of New York, as is, of course, the City of New York.  Compl.

¶¶ 19, 22.  And the amount in controversy well exceeds $75,000.  Compl. at 22.  The requirements

of diversity jurisdiction are therefore met.  28 U.S.C. § 1332(a).

#### 2. Negligence Claim

To the extent Plaintiff's negligence claim is predicated on the Officer's conduct in

attempting to arrest him, this claim fails because the claim arises out of an alleged false arrest.

However, Plaintiff's negligence claim survives to the extent he relies on a theory of the Officers'

special duty to protect him.  "New York does not, as a matter of public policy, recognize a claim for

---

[4] Because N.Y.C. Admin Code § 8-802 "shall be construed in the same manner as the right against unreasonable search and seizure . . . created, granted or protected by . . . section 12 of article I of the state constitution," Plaintiff has plausibly pleaded a violation of N.Y.C. Admin Code § 8-802.  N.Y.C. Admin Code § 8-807.

Defendants argue that § 8-802 should be construed in the same manner as the Fourth Amendment, *see id.*, but neither party has provided case law on how courts should construe § 8-802 when there is daylight between the rights protected under the New York search-and-seizure provision and the Fourteenth Amendment.  The Court of Appeals of New York has held that the protections of article I, § 12 of the state constitution are at times more expansive than those of the Fourteenth Amendment, *see People v. Scott*, 79 N.Y.2d 474, 495–502 (1992), so it logically follows that for § 8-802 to reference both the Fourteenth Amendment *and* article I, § 12 of the state constitution, it adopts the more expansive interpretation.

Defendants also argue that Plaintiff's § 8-802 claims are duplicative of Plaintiff's federal claims.  Def. MOL at 24.  Because the Court dismisses Plaintiff's federal claims, his § 8-802 claims are not duplicative.

negligence arising out of an arrest." *Dollard v. City of New York*, 408 F. Supp. 3d 231, 238 (E.D.N.Y. 2019). "Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Dirienzo v. United States*, 690 F.Supp. 1149, 1155 (D. Conn. 1988) (construing New York law); *Boose v. City of Rochester*, 71 A.D.2d 59, 421 N.Y.S.2d 740, 743 (4th Dep't 1979)). A plaintiff must instead "proceed by way of the traditional remedies of false arrest and imprisonment." *Secard v. Dep't of Social Servs. of Cty. of Nassau*, 612 N.Y.S.2d 167, 168 (2d Dep't 1994). Therefore, to the extent Plaintiff alleges that he was injured by the Officers' alleged conduct in attempting to arrest him, he "may not recover under general negligence principles." *Ferguson v. Dollar Rent A Car, Inc.*, 959 N.Y.S.2d 55, 56 (N.Y. App. Div. 1st Dept. 2013).

However, in his opposition brief, Plaintiff abandons any argument that the negligence claim arises out of the alleged attempted arrest. *See* Pl. Opp. at 20. Instead, Plaintiff argues that the Officers had a "special duty owed to Plaintiff when they told Plaintiff's family" to "stay right here" because they "will find him and bring him back." *Id.*[5]

Plaintiff adequately states a claim for negligence under the "special duty" theory. "In any common-law negligence case brought pursuant to New York law, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 308 (2022) (internal quotation marks omitted). "[I]f the action challenged in the litigation is governmental, the existence of a special duty is an element of the plaintiff's negligence cause of action." *Id.* "[P]olicing is a long-recognized,

---

[5] Defendants argue that Plaintiff should not be permitted to amend his pleadings with a new legal theory in his opposition brief, *see* Def. Reply at 9 n.3, but Plaintiff alleged all the material facts of his negligence claim in his Complaint, and the "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014).

quintessential governmental function." *Id.* at 309 (internal quotation marks omitted). "[A] special duty can arise in three situations: (1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition." *Id.* at 310 (quoting *Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420, 426 (2013)). To allege an assumption of a duty, "[a] plaintiff must establish four elements":

> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

*Id.* at 312–13. "[W]here a municipality assumes a duty to a particular person or class of persons, it must perform that duty in a nonnegligent manner, notwithstanding that absent its voluntary assumption of that duty, none would have otherwise existed." *Florence v. Goldberg*, 44 N.Y.2d 189, 196 (1978).

Plaintiff pleads that the Officers assumed a special duty to protect and retrieve Plaintiff, that they breached this duty by taking action that put him at risk, and that this breach caused his accident and consequent injuries. Defendants only contest that a special duty was established. *See* Def. Reply at 9. The Court finds that Plaintiff adequately alleges the four elements required for the existence of a special duty. First, in "order[ing]" Plaintiff's mother and sister to remain in the apartment and telling them, "we got this," and "we will find him and bring him back," Compl. ¶¶ 36–37, the Officers "promise[d]" to undertake "an affirmative duty to act" in finding and returning Plaintiff during this episode, *Ferreira*, 38 N.Y.3d at 312. *See Cuffy v. City of New York*, 69 N.Y.2d 255, 262 (1987) (where a police officer "promised police assistance" for the purpose of "provid[ing] the family with protection"); *Torres v. Faxton St. Lukes Healthcare*, 227 F. Supp. 3d 216, 239 (N.D.N.Y. 2017), *rev'd and remanded on other grounds sub nom. Torres v. Graeff*, 700 F. App'x 80 (2d Cir. 2017)

18

(holding that police officers assumed a special duty in promising a man's family that they were taking him to the hospital for a mental health evaluation). Second, Plaintiff alleges that the Officers were aware "that inaction could lead to harm." *Ferreira*, 38 N.Y.3d at 312. The Officers "were on notice that [plaintiff] suffered from an ongoing mental condition" that could result in harm to himself or others, *Torres*, 227 F. Supp. 3d at 234, because "Plaintiff's sister and his mother advised the Officers that Plaintiff was experiencing a manic episode and required medical assistance," Compl. ¶ 29.

As to the third and fourth elements, Plaintiff alleges that his family members relied on their direct contact with the Officers by remaining in the apartment and not "go[ing] with [the Officers], in order to reassure Plaintiff and calm him down." *See* Compl. ¶¶ 35, 37. Even though Plaintiff is not alleged to have relied on or to have made direct contact with the Officers, the New York Court of Appeals "ha[s] previously relaxed the requirements of the special duty rule to allow a competent family member of the injured party to satisfy the elements of direct contact and justifiable reliance." *Maldovan v. Cnty. of Erie*, 39 N.Y.3d 166, 173–74 (2022); *see Florence*, 44 N.Y.2d at 194 ("[A] municipality whose police department voluntarily assumes a duty to supervise school crossings the assumption of that duty having been relied upon by parents of school children may be held liable for its negligent omission to . . . take other appropriate action to safeguard the children."); *Cuffy*, 69 N.Y.2d at 262 ("Although neither of those parties had 'direct contact' with the public servant who had promised to provide the family with protection, the 'special duty' . . . must be deemed to have run to them. It was their safety that prompted [their family member] to solicit the aid of the police, and it was their safety that all concerned had in mind when [the officer] promised police assistance."); *Applewhite*, 21 N.Y.3d at 431. Therefore, Defendants' motion to dismiss Plaintiff's negligence claim on the basis of a failure to plausibly allege a special duty is denied.

### 3. Assault and Battery Claims

#### a. Applicable Law

"Under New York law, civil assault 'is an intentional placing of another person in fear of imminent harmful or offensive contact.'" *Tardif v. City of New York*, 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Charkhy v. Altman*, 678 N.Y.S.2d 40, 41 (N.Y. App. Div. 1st Dept. 1998)). "Civil battery 'is an intentional wrongful physical contact with another person without consent.'" *Id.* (quoting *Charkhy*, 678 N.Y.S.2d at 41). "The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'" *Id.* (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)). "To succeed on assault or battery claims in the law enforcement context, a plaintiff must also demonstrate that the defendant officer's conduct 'was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties.'" *Id.* (quoting *Nimely v. City of New York*, 414 F.3d 381, 391 (2d Cir. 2005)). "[P]er the text of [New York Penal Law § 35.30], the use of physical force 'when and to the extent the officer reasonably believes such to be necessary,' is the 'functional equivalent' of an objective reasonableness standard." *Id.* (brackets omitted) (quoting *Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988)).

For a battery claim, "[t]he plaintiff need not allege an intent to harm, rather a plaintiff need only allege the act causing the bodily contact was done with the intent to make the contact, and the contact was offensive." *Rothman v. City of New York*, No. 19-cv-0225 (CM), 2019 WL 3571051, at *16 (S.D.N.Y. Aug. 5, 2019). "The contact also may be direct or indirect—it is sufficient for a defendant to set in motion the force that causes the contact." *Id.*; *see also De Santis v. Luger*, 257 N.Y. 476, 478 (1931) (holding that closing a door on the plaintiff could constitute a battery even though it was the door that made contact with the plaintiff rather than the defendant himself).

### b. Plaintiff Adequately Pleads Assault Claims

Plaintiff's assault claims are adequately pleaded.  Plaintiff alleges that he was put in fear of imminent harm or offensive contact when the Officers chased him, yelling and cursing.  Compl. ¶¶ 39, 79.  Because the question of "[w]hether an officer uses reasonable force is a fact specific inquiry, which requires a balancing of various factors," *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 170 (E.D.N.Y. 2024) (internal quotation marks omitted), generally "it is for a jury to determine whether the use of force [] was reasonable," *Hernandez v. Denny's Corp.*, 114 N.Y.S.3d 147, 151 (N.Y. App. Div. 4th Dept. 2019).  *See also Tardif*, 991 F.3d at 411 (holding that whether in an arrest situation or a non-arrest situation, analysis must "focus[] upon whether such force was 'more than necessary under all the circumstances'" (quoting *Jones v. State*, 33 N.Y.2d 275, 280 (1973))).  The Court has already determined that no probable cause is alleged on the face of the Complaint.  Therefore, the Court does not have an adequate record to determine what the Officers "reasonably believe[d]" about whether Plaintiff "committed an offense" prior to the attempted arrest.  New York Penal Law § 35.30.  Because the Court cannot determine that "it [is] clear from the record that the use of force was justified and reasonable," the Court will not dismiss Plaintiff's assault claim at this stage.  *Tardif*, 991 F.3d at 411.

Plaintiff has also adequately alleged assault against the City of New York because the City can be held liable under a theory of *respondeat superior*.  One crucial difference between assault and battery under New York law and an excessive force claim under federal law is that "under state law, the City may be held vicariously liable for the torts of its employees . . . regardless of whether those actions resulted from a municipal policy or practice."  *Johnson v. New York Dep't of Corr.*, No. 15-cv-640, 2015 WL 4884880, at *3 (E.D.N.Y. Aug. 13, 2015); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 399 (S.D.N.Y. 2013) (stating that *respondeat superior* applies to state law claims for assault and battery against a city).  Therefore, Plaintiff's claims for assault against the Officers and

the City of New York may proceed.

### c.  Plaintiff Fails to Plead a Battery Claim

Plaintiff has not pleaded a claim for battery because Plaintiff has not pleaded that the

Officers made offensive contact with Plaintiff or intended to cause the alleged indirect offensive

contact with Plaintiff.  The Officers, in chasing Plaintiff, are alleged to have intended to apprehend

him, *see Sierra v. City of New York*, No. 20-cv-10291 (CM) (GWG), 2024 WL 947530, at *3 (S.D.N.Y.

Mar. 5, 2024) (holding that an officer touching a man's arm constituted offensive contact "because

the law of battery directs that 'the slightest unlawful touching of the person of another is sufficient'"

(quoting *United Nat. Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)));

however, Plaintiff does not allege that the Officers ever apprehended or otherwise touched him.

Plaintiff was first struck by a large vehicle.  Compl. ¶ 6.  While Plaintiff argues that the Officers

"forced him into traffic," there is no allegation that this was the Officers' intention.  Pl. Opp. at 21.

The chase created a *risk* that Plaintiff would be struck by a car, but "[t]here is no such cause of

action as negligent assault and battery."  *United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir.

1993).

Plaintiff cites *Sierra* for the proposition that "an actor is subject to liability to another for

battery if he acts intending to cause a harmful or offensive contact with the person of an individual

and a harmful contact with a different individual directly or indirectly results."  *Sierra*, 2024 WL

947530, at *3 (internal quotation marks omitted).  However, Plaintiff's citation to *Sierra* is misplaced

because *Sierra* is a case where the officer's intentional contact with one person caused that person to

make contact with a third person.  *Id.* at *1.  Here, the Officers are not alleged to have made

intentional contact with Plaintiff or with anyone else to have led to the collision with the truck.

### 4.  Negligent Infliction of Emotional Distress Claim

Plaintiff fails to state a claim for negligent infliction of emotional distress (NIED) because

his claim is predicated on an injury incident to an alleged attempted arrest.  "To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021).  "A plaintiff may recover under one of two theories:  (1) the 'bystander theory' or (2) the 'direct duty theory.'"  *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341, 363 (S.D.N.Y. 2021) (internal quotation marks omitted).  "A plaintiff may recover under the 'direct duty' theory for an emotional injury from defendant's breach of a duty that unreasonably endangered plaintiff's own physical safety."  *Id.*

"However, New York law explicitly bars recovery for negligent or intentional infliction of emotional distress when such claims are based on conduct that is embraced by a traditional tort remedy."  *Poulos v. City of New York*, No. 14-cv-3023 (LTS) (HBP), 2015 WL 5707496, at *10 (S.D.N.Y. Sept. 29, 2015) (internal quotation marks omitted); *see also Uber Techs.*, 551 F. Supp. 3d at 364 (S.D.N.Y. 2021) ("A NIED claim cannot be asserted if it is 'essentially duplicative of tort or contract causes of action.'").  Thus, "[t]o the extent that a claim for negligent infliction of emotional distress is based upon injury incident to an arrest, a plaintiff must resort to the traditional tort remedies of false arrest, false imprisonment, and malicious prosecution."  *Toure v. Air France*, No. 2:21-cv-1645 (GRB) (ST), 2022 WL 4079592, at *4 (E.D.N.Y. Sept. 6, 2022) (internal brackets omitted) (collecting cases); *see also Cabrera v. City of New York*, No. 16-cv-1098 (GBD), 2017 WL 6040011, at *11 (S.D.N.Y. Dec. 4, 2017) ("[B]ecause the complained-of conduct here falls within the scope of claims of unreasonable search and seizure, false arrest, and malicious prosecution, a cause of action for IIED or NIED is unavailing."); *Lee v. McCue*, 410 F. Supp. 2d 221, 227 (S.D.N.Y. 2006) ("[P]laintiff's causes of action for battery and false arrest provide a complete source of recovery for his injuries.  Any further claim for negligent infliction of emotional distress would be duplicative of

these common law claims.").

Plaintiff has not stated a claim for NIED because his claim is "essentially duplicative" of his claims for negligence, assault, and false arrest. *Uber Techs.*, 551 F. Supp. 3d at 364. His NIED claim is "based on the same conduct that constitutes the basis for" those claims. *Poulos*, 2015 WL 5707496, at *10. Those claims concern the Officers' attempt to seize him; their failure to uphold an alleged duty of care owed to Plaintiff; his consequent fear of harm; and the injuries he sustained from being hit by the truck in reacting to that fear. Plaintiff provides no additional allegations that distinguish his NIED claim. *See Caravalho v. City of New York*, No. 13-cv-4174 (PKC) (MHD), 2016 WL 1274575, at *23 (S.D.N.Y. Mar. 31, 2016) ("There are no allegations that Bovell engaged in any other potentially tortious conduct against Guest, for example verbal conduct, which is not subsumed by Guest's assault and battery or excessive force claims.").

### 5. Negligent Hiring, Training, or Retention Claim

Plaintiff's negligent hiring, training, or retention claim fails because the allegations show that the Officers were acting within the scope of their employment. "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ahluwalia v. St. George's U., LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 297 (2d Cir. 2015) (unpublished) (quoting *Doe v. City of New York*, No. 09-cv-9895 (SAS), 2013 WL 796014, at *3 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 558 F. App'x 75 (2d Cir. 2014)). Further, "[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment." *Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 548 (E.D.N.Y. 2022) (quoting *Colodney v.*

*Continuum Health Partners, Inc.*, 2004 WL 829158, at *8 (S.D.N.Y. Apr. 15, 2004)). "When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention." *Id.*

While "[n]ormally the question of whether a defendant employee was acting within the scope of his or her employment depends heavily on the facts and circumstances of the particular case," *id.*, in this case, Plaintiff specifically alleges that the Officers were acting within the scope of their employment during the alleged event. *See* Compl. ¶ 24 ("[T]he individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties."); *id.* ¶¶ 25, 81. Clearly, the allegations demonstrate that the Officers were acting in response to a 911 call, pursuant to their duties as police officers for the City of New York. *See id.* ¶¶ 28–29.

Additionally, "where a defendant employer admits its employees were acting within the scope of their employment, an employer may not be held liable for negligent hiring, training, and retention as a matter of law." *Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 548 (E.D.N.Y. 2022) (quoting *Rowley v. City of New York*, 2005 WL 2429514, at *13 (S.D.N.Y. Sept. 30, 2005)). Here, the "defendants admit that the individual defendants were acting as agents and employees of the City of New York and were acting within the scope of their employment at all times relevant to the subject incident." *Id.*; *see* Def. MOL at 8–9, 22–23. For this reason, Plaintiff cannot maintain a negligent hiring, training, or retention claim against the City of New York for the alleged event.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's federal claims, his battery claim, his NIED claim, and his negligent

hiring/training/retention claim are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  As to the

remaining claims, Defendants' motion to dismiss is denied.  The Clerk of Court is directed to

terminate the motion pending at Dkt. No. 17.

       SO ORDERED.

Dated:  May 9, 2025
       New York, New York

                                    GREGORY H. WOODS
                            United States District Judge